**James HANNIS, Appellant–Plaintiff,**

v.

**John DEUTH, Superintendent Correctional Industrial Facility, Appellee–Defendant.**

No. 18A05–0402–CV–67.

Court of Appeals of Indiana.

Oct. 20, 2004.

James Hannis, Muncie, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Jenna M. Stewart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

James Hannis appeals the trial court's denial of his petition for writ of habeas corpus relief filed against John Deuth, Superintendent of the Correctional Industrial Facility. Hannis raises one issue, which we restate as whether the trial court's order denying Hannis's petition for writ of habeas corpus relief is clearly erroneous. We affirm.

The relevant facts follow. On March 21, 1996, Hannis was sentenced to eight years for Count I, possession of cocaine as a class C felony, and two years each for Count II, possession of a schedule IV controlled substance as a class D felony, Count III, dealing in marijuana as a class D felony, and Count IV, resisting law enforcement as a class D felony. The trial court ordered Hannis to serve Count II,

III, and IV concurrently but consecutive to Count I. On November 22, 1999, the Indiana Department of Correction noted in an "External/Internal Commitment Change" document that Hannis was "turn[ed] over to new commitment" and started serving the concurrent two-year sentences for Count II, III, and IV. Appellant's Appendix at 5. The document also contained an option of "Discharge to new commitment," but that option was not marked. *Id.*

Hannis was later released to parole on August 24, 2000 with a "maximum expiration of sentence date" of November 22, 2001. *Id.* at 4. In March 2001, a parole violation warrant was issued for Hannis because Hannis had been arrested for possession of marijuana. On May 17, 2001, the parole board found that Hannis had violated his parole. The parole board ordered that Hannis "[b]e assessed the balance of [his] sentence." Appellee's Appendix at 75. The parole board listed the "PAROLING CRIME/SENTENCE" as "Possession of Cocaine, Class C 8 years." *Id.* at 76.

On February 14, 2002, Hannis filed a Petition for Writ of Habeas Corpus Relief and filed an amended petition in December 2003.[1] After a hearing, the trial court entered findings of fact and conclusions thereon in part as follows:

3. The Honorable Robert Barnet in the Delaware Superior Court No. 1 (now Delaware Circuit Court No. 3) sentenced [Hannis], under Cause No. 18D01–9412–CF–0058, to eight (8) years on Count I, and two (2) years on each of Counts II, III, and IV, with Count I consecutive to Counts II, III, and IV, and Counts II, III, and IV concurrent with each other but consecutive to Count I.

4. The issue in this case involved the date of November 22, 1999, which Hannis obtained parole status on the eight[-]year sentence on Count I, leaving 1,551 days to serve on the 2,922 day sentence. Hannis began serving the two[-]year concurrent sentences on Counts II, III, and IV on November 23, 1999, and he was released to parole on August 24, 2000.

5. Hannis has discharged his time under Counts II, III, and IV. Respondent's position is that after applying the credits Hannis has earned, he had served (as of December 11, 2003) 2,183 days of the 2,922 day sentence under Count I. Hannis argued that on November 22, 1999, he "turned over" to serve his time on Counts II, III, and IV, and he was discharged from all other time under Count I. Hannis cites to the Court *Meeker v. Indiana Parole Board,* 794 N.E.2d 1105 (Ind. App.2003).

6. The document in question is in State's Exhibit 1, marked "4." It is titled "Indiana Department of Correction External/Internal Commitment Change," and states: "Turn over to new commitment from 18D01–9412–CF–58." The Parole Board did not sign the document, nor is there any indication that the Parole Board took any action with respect to Hannis' eight[-]year sentence on Count I.

7. The Court finds that *Meeker* does not apply in this case. The Parole Board took no action on November 22, 1999, to discharge Hannis from the sentence under Count I. By an internal document, the [Department] of Corrections (sic) noted that Hannis was now serving his three concurrent two-year sentences.

1. The appendices did not contain the amended petition.

8. As to this allegation and all other allegations raised in the Petition, the Court finds that Hannis is properly in custody on the parole violation proceedings and is not entitled to his release from custody or relief from the parole violation proceedings.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Verified Petition for Writ of State Habeas Corpus Relief filed by [Hannis] be and hereby is denied.

Appellant's Appendix at 6–8.

 In denying Hannis's petition for writ of habeas corpus relief, the trial court issued findings of fact and conclusions thereon.[2] Sua sponte findings control only as to the issues they cover. *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997). A general judgment will control as to the issues upon which there are no findings. *Id.* "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

When a trial court has made findings of fact, we review the sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.* We will set aside the findings only if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.*

In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Pitman v. Pitman,* 721 N.E.2d 260, 263–264 (Ind.Ct.App. 1999), *trans. denied.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* To make a determination that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Yanoff,* 688 N.E.2d at 1262.

 This case arises from the denial of Hannis's petition for writ of habeas corpus relief. Ind.Code § 34–25.5–1–1 (1998) provides that "[e]very person whose liberty is restrained, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered from the restraint if the restraint is illegal." "The purpose of the writ of habeas corpus is to bring the person in custody before the court for inquiry into the cause of restraint." *Partlow v. Superintendent, Miami Correctional Facility,* 756 N.E.2d 978, 980 (Ind.Ct.App.2001). "One is entitled to habeas corpus only if he is entitled to his immediate release from unlawful custody." *Id.*

Hannis argues that the trial court erred by denying his writ for habeas corpus because the parole board erroneously reinstated his eight-year sentence for possession of cocaine. Hannis does not dispute that he was on parole when he committed

---

**2.** The State argues that we should review the denial of the writ for habeas corpus relief as a denial of a petition for post-conviction relief. In situations where entitlement to immediate release is not also alleged, a petition alleging that parole has been improperly revoked is properly treated as a petition for post-convic-tion relief. *Hawkins v. Jenkins,* 268 Ind. 137, 139, 374 N.E.2d 496, 498–99 (1978). Here, Hannis argues that he is entitled to immediate release. Consequently, we do not treat the petition as a petition for post-conviction relief.

the new offenses. Rather, Hannis's sole argument is that his eight-year sentence was discharged on November 22, 1999, when the Department of Correction "turn[ed]" him over and, as a result, the parole board could not have reinstated the eight-year sentence when Hannis violated his parole in 2001.

■ We begin by analyzing the statutes governing parole and discharge. The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Hendrix v. State*, 759 N.E.2d 1045, 1047 (Ind.2001). The best evidence of legislative intent is the language of the statute itself, and we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *State v. Rumple*, 723 N.E.2d 941, 944 (Ind.Ct. App.2000). In construing a provision, we will assume that the legislature did not enact a useless provision. *Id.* Therefore, when possible, every word is to be given effect and no part of the statute is to be construed so as to be meaningless if it can be reconciled with the rest of the statute. *Id.*

Parole and discharge are governed by Ind.Code §§ 11–13–3–1 to –10 and Ind. Code §§ 35–50–6–1 to –7. The statutes classify offenders as: (1) offenders sentenced for offenses under laws other than Ind.Code §§ 35–50; and (2) offenders sentenced under Ind.Code §§ 35–50. Offenders sentenced for offenses under laws other than Ind.Code §§ 35–50 would include those offenders sentenced before the effective date of Ind.Code § 35–50. *See* Acts 1976, Pub.L. No. 148, § 8 (eff. Oct.1, 1977). Because Hannis was sentenced under Ind. Code § 35–50, we consider only the stat-

utes applicable to offenders sentenced under Ind.Code § 35–50.

■ Ind.Code § 11–13–3–2(a) (1998) provides that "[r]elease on parole and discharge of an offender sentenced for an offense under IC 35–50 shall be determined under IC 35–50–6." Therefore, we must look to Ind.Code § 35–50–6 for legislation regarding Hannis's release on parole and discharge. Ind.Code § 35–50–6–1 (Supp.2003) provides, in part:

(a) Except as provided in subsection (d), when a person imprisoned for a felony completes his fixed term of imprisonment, less the credit time he has earned with respect to that term, he shall be:

(1) released on parole for not more than twenty-four (24) months, as determined by the parole board;

(2) discharged upon a finding by the committing court that the person was assigned to a community transition program and may be discharged without the requirement of parole; or

(3) released to the committing court if his sentence included a period of probation.

(b) Except as provided in subsection (d), a person released on parole remains on parole from the date of his release until his fixed term expires, unless his parole is revoked or he is discharged from that term by the parole board. In any event, if his parole is not revoked, the parole board shall discharge him after the period set under subsection (a) or the expiration of the person's fixed term, whichever is shorter.

\* \* \* \* \*

Ind.Code § 35–50–6–1(a) "makes it clear that a felon is released to either parole or probation; he is not completely dis-

charged." *Page v. State*, 517 N.E.2d 427, 430 (Ind.Ct.App.1988), *trans. denied.*

In Hannis's case, Ind.Code § 35–50–6–1(a)(2) and (a)(3) are not applicable. Thus, when Hannis "complete[d] his fixed term of imprisonment, less the credit time he ... earned with respect to that term," the statute required that he "shall be ... released on parole for not more than twenty-four (24) months, as determined by the parole board." I.C. § 35–50–6–1(a)(1). Further, "the parole board shall discharge him after [the twenty-four month period] or the expiration of [his] fixed term, whichever is shorter." I.C. § 35–50–6–1(b).

■ After completing his eight-year sentence less credit time, Hannis still had to serve the consecutive two-year sentences. The parole statutes make no specific provision for dealing with consecutive sentences. However, it is clear that with respect to any given sentence a person is in one of four stages. First, he is waiting to start serving the sentence, as here Hannis was waiting to start serving the concurrent two-year sentences while he was serving the eight-year sentence. Second, he is serving the sentence. Third, he is on parole on the sentence. Fourth, he is discharged from the sentence. Under the statute, when Hannis completed his eight-year sentence less his credit time, it was mandatory that he be released on parole for the lesser of twenty-four months or the remainder of his fixed term, approximately four years and four months. As a result, Hannis completed his eight-year sentence less his credit time on November 22, 1999, and was then on parole for twenty-four months, i.e., until November 22, 2001.[3] Although Hannis was on parole from the eight-year sentence, he also had to serve his remaining concurrent two-year sentences, which were consecutive to the eight-year sentence. Because of the mandatory nature of Ind.Code § 35–50–6–1, we conclude that, although Hannis was on parole for the eight-year sentence after November 22, 1999, part of that parole period passed while he was in prison serving his concurrent two-year sentences.

On August 24, 2000, upon his completion of the concurrent two-year sentences less credit time, Hannis was released to parole on the concurrent two-year sentences. Hannis again was required to serve parole in the amount of the lesser of twenty-four months or the remainder of his concurrent two-year terms. The remainder of his concurrent two-year terms was less than twenty-four months, and, therefore, Hannis had to serve the remainder of his concurrent two-year sentences on parole. Hannis had started serving the concurrent two-year sentences on November 22, 1999. Thus, by coincidence, both the parole on the eight-year sentence and the parole on the concurrent two-year sentences ended on November 22, 2001. For the parole board to discharge Hannis on the eight-year sentence, he had to complete the lesser of a twenty-four month period of parole or his fixed term had to expire. I.C. § 35–50–6–1(b). Neither of these two events had occurred. Hannis was still on parole from the eight-year sentence and the concurrent two-year sentences when he was arrested for a new violation and violated his parole. Consequently, the parole board properly found that Hannis had violated his parole on the eight-year sentence and ordered him to serve the remainder of the sentence.

In arguing that he was discharged from the eight-year sentence on November 22,

---

**3.** In the absence of action by the parole board, the default period for parole would be the maximum of twenty-four months.

1999 and that the parole board could not order him to serve the remainder of the eight-year sentence, Hannis relies solely upon *Meeker v. Ind. Parole Bd.*, 794 N.E.2d 1105 (Ind.Ct.App.2003), *reh'g denied, trans. denied.* There, the defendant was convicted of two counts of dealing in a schedule II controlled substance in 1991, and the trial court sentenced him to twelve years on each count to be served concurrently. *Id.* at 1106. On September 4, 1995, the defendant was released on parole. *Id.* However, in March 1996, the defendant was arrested and charged with public intoxication, operating a vehicle while intoxicated, and battery. *Id.* at 1106–1107. The defendant was convicted of the charges and sentenced to five years. *Id.* As a result, on September 6, 1996, the parole board revoked his parole and ordered him to serve the remainder of his two concurrent dealing sentences. *Id.*

On July 21, 1998, the parole board decided that the defendant should be "turned over to another commitment," which allowed him to begin serving the alcohol-related sentences. *Id.* On September 14, 1998, the defendant received a discharge notice regarding the operating a motor vehicle sentence, and on March 15, 1999, the defendant received a discharge notice on the misdemeanor battery sentence. *Id.* On October 13, 2000, the defendant was released on parole on the remaining sentences. *Id.* However, the defendant again violated his parole by committing a new criminal offense, and the parole board revoked his parole and reinstated the sentences for the dealing convictions. *Id.* The defendant challenged his parole revocation in a habeas corpus petition, which the trial court treated as a petition for post-conviction relief and denied. *Id.*

On appeal, the defendant argued that when the parole board "turned over" his dealing sentences in July 1998, those sentences could not be used as the basis for parole at a later date. *Id.* at 1107–1108. This court concluded that "Meeker should not have been paroled on the dealing convictions after he was 'turned over' to and did in fact serve the alcohol related sentences" and that "the parole board could not effectively suspend [the defendant's] parole on one set of sentences until after he served the sentences on other unrelated convictions." *Id.* at 1108. This court further held:

> This conclusion is further supported by the language in Meeker's 1996 parole revocation form. That form provided that Meeker would be assessed the balance of his sentence and that his new commitment on the alcohol related charges would be held in abeyance until the end of his commitment or until the parole board turned him over to his new commitment. On July 21, 1998, the parole board decided that Meeker should be "turned over" to the other commitment effective immediately. Although the State argues otherwise, we conclude that when the parole board "turned over" Meeker to begin serving the alcohol related sentences, it effectively discharged him from the remainder of the dealing convictions. There is no statutory authority or case law definition of "turn over" and we conclude that we must construe the phrase against the State. During the 1998 review, the parole board could have refused to "turn over" Meeker's sentence, as it had done in 1997, until he served the remainder of his fixed term. The parole board did not do so, and the State provides no support for its contention that Meeker could again be required to serve the remainder of his dealing sentence at some later date.

> * * * * *

> Our decision is also consistent with the parole release agreements that

Meeker signed. The first agreement, signed on September 1, 1995, provides that the maximum sentence for Meeker's dealing convictions expired on March 5, 2002. On the other hand, the October 12, 2000, agreement provides that the maximum expiration of his alcohol related sentences was March 15, 2002. The different expiration dates indicate that when Meeker signed the 2000 parole release agreement, he was paroled on sentences other than the dealing sentences, which were set to expire ten days before the alcohol related convictions. If Meeker's 2000 parole was in fact based on the alcohol related convictions, the parole board improperly revoked his parole and ordered him to serve the remainder of his dealing sentences. We are left with the firm belief that an error has been made and reverse the decision of the post-conviction relief court.

*Id.* at 1108–1109.

We conclude that *Meeker* is distinguishable from this case. First, *Meeker* dealt with sentences for two unrelated convictions (the dealing convictions and the alcohol related conviction), and we held that "the parole board could not effectively suspend [the defendant's] parole on one set of sentences until after he served the sentences on other *unrelated* convictions." *Id.* at 1108 (emphasis added). Here, we are dealing with consecutive sentences imposed under one judgment. Hannis fails to explain how the holding in *Meeker* is applicable to the facts of this case.

Second, in *Meeker,* the parole board "turned over" the defendant to begin serving his other sentences from the subsequent alcohol-related convictions and effectively discharged the defendant from the original sentence. Here, the only evidence of a "turn over" is a document prepared by the Department of Correction dated November 22, 1999. Ind.Code § 35–50–6–1(b) provides that "if his parole is not revoked, the *parole board* shall discharge him after the period set under subsection (a) [twenty-four months] or the expiration of the person's fixed term, which ever is shorter." (emphasis added). The record contains no evidence that the parole board "turned over" or discharged Hannis. Thus, unlike the defendant in *Meeker,* Hannis presented no evidence that the parole board took action to discharge his eight-year sentence.

Further, under our interpretation of Ind.Code § 35–50–6–1, we would reach the same ultimate result as the court in *Meeker.*[4] Meeker's parole on the dealing convictions was revoked, and the parole board ordered him to serve the remainder of his two concurrent dealing sentences. When the parole board turned him over on July 21, 1998, he was then required to serve twenty-four months on parole. *See* I.C. § 35–50–6–1(c) ("A person whose parole is revoked shall be imprisoned for the remainder of his fixed term. However, he shall again be released on parole when he completes that remainder, less the credit time he has earned since the revocation. The parole board may reinstate him on parole at any time after the revocation."). Instead of being released from prison on parole, Meeker began to serve his alcohol-related sentences and was not released from prison until October 13, 2000. At

---

4. In *Meeker,* the court held that Ind.Code § 35–50–6–1 was not applicable because "this statute applies to persons released from prison" and Meeker was not released when he was "turned over." *Meeker,* 794 N.E.2d at 1108. Rather, Meeker began serving his alcohol-related sentences. To the extent *Meeker* holds that Ind.Code § 35–50–6–1 is not applicable, we respectfully disagree and conclude that the statute applies even where the offender is not released from prison because he must serve additional sentences.

that time, he had already completed the twenty-four month period of parole on the dealing convictions, and he started a twenty-four month period of parole on the alcohol-related convictions. Because he had completed the period of parole for the dealing sentences, he was required to be discharged on those sentences by Ind.Code § 35–50–6–1(b). Consequently, when Meeker's parole was later revoked, the parole related to the alcohol convictions, not the dealing convictions, and the parole board could not reinstate the sentences on the dealing convictions. Thus, under our interpretation of Ind.Code § 35–50–6–1, we would have determined that the parole board improperly ordered Meeker to serve the remainder of the dealing sentences, which is the same result reached by the court in *Meeker*.

In summary, we conclude that under Ind.Code § 35–50–6–1, Hannis was still on parole from the eight-year sentence when he committed a new offense. Thus, when the parole board revoked his parole, the parole board properly reinstated Hannis's eight-year sentence. Consequently, we conclude that the trial court's findings of fact and conclusions thereon denying Hannis's writ for petition of habeas corpus are not clearly erroneous.

For the foregoing reasons, we affirm the trial court's denial of Hannis's petition for writ of habeas corpus relief.

Affirmed.

BAILEY, J., and MAY, J., concur.